**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Civil Action No. 05 C 5140 |
| ) | |
| **NATIONAL ASSOCIATION OF** ) | |
| **REALTORS,** ) | Judge Filip |
| ) | |
| **Defendant,** ) | |
| ) | Magistrate Judge Denlow |
| vs. ) | |
| ) | |
| **ZIPREALTY, INC.,** ) | |
| ) | |
| **Discovery Respondent.** ) | |

**ZIPREALTY'S RESPONSE TO NAR'S MOTION TO REJECT
THE RETROACTIVE ASSERTION OF PRIVILEGE**

In its Motion to Reject the Retroactive Assertion of Privilege by ZipRealty, Inc. ("Motion"), Defendant National Association of Realtors ("NAR") has taken the extraordinary position that third-party discovery respondent Zip Realty, Inc. ("Zip") somehow has waived its attorney client privilege with respect to not only the attorney client privileged documents at issue, but the entire subject matter of the VOW policy. Not only is NAR's tactically-motivated motion untimely, it is entirely contrary to the spirit and intent underlying the privilege "clawback" of the protective orders entered by this Court.

NAR's Motion comes after several months of court hearings and communications with Zip's counsel in which privilege issues were repeatedly addressed. Yet, not once during that lengthy period did NAR ever raise this privilege waiver issue with Zip. In fact, NAR admits to having had possession of the admittedly privileged documents in dispute for over a year prior to presenting this motion. NAR said nothing, even when Zip, in the spirit of discovery cooperation,

12230630 v.1 - 1 -

agreed to provide NAR without prior review the unreviewed entire results of the electronic email search results with a privilege "clawback" agreement. Now, NAR asserts that Zip intentionally waived the privilege with respect to clearly privileged documents as part of a purported Zip ploy to aid the Department of Justice. As will be set forth below, NAR's waiver theory is nothing more than sheer speculation and is undeniably illogical. Worse yet, NAR's position defies the spirit of the privilege "clawback" agreement recommended by this Court and adopted by the parties to expedite discovery with respect to the Zip electronic search results.

**I.    FACTUAL BACKGROUND**

As part of the Department of Justice's ("Department") investigation into the anti-competitive effects of NAR's policies regulating Internet-based real estate brokers like Zip, the Department issued a Civil Investigative Demand ("CID") to Zip well before this litigation was filed. Zip fulfilled its obligations pursuant to the CID and produced tens of thousands of pages of documents to the Department, largely without the assistance of outside counsel.

Last fall after the initiation of this litigation, Zip was served with a subpoena duces tecum by NAR, and since December of 2006, Zip's response to the subpoena has been monitored by this Court. Throughout multiple status conferences before the court and numerous communications with Zip's counsel regarding the protection of privileged documents that likely will result from Zip's electronic email search (or might be inadvertently produced in document form), NAR, clearly knowing of its possession of these documents–produced by Zip to the Department and then to NAR by the Department–never brought the privileged documents which are the subject of this motion to the attention of Zip or the Court. Nor did NAR mention its position reflected in this motion–that Zip has waived the attorney client privilege not only with respect to the documents at issue, but with respect to the entire subject matter of the VOW policy.

After Zip agreed to provide without review the results of the massive electronic emails search results to NAR outside counsel with a privilege "clawback" agreement, NAR then notified Zip's counsel of its possession of the privileged documents at issue. Zip's counsel immediately demanded in writing that the documents be returned as provided by the rules. NAR refused.

Instead, NAR filed this motion seeking to have the Court to declare that Zip has waived the obvious privileges applicable to these documents and the VOW policy subject matter.

## II. THE DOCUMENTS AT ISSUE ARE UNQUESTIONABLY PRIVILEGED

### A. MEMORANDA FROM JAMES WAGSTAFFE TO NIR MARGALIT

There is no doubt that the documents at issue are attorney-client privileged. The legal memoranda from Zip's outside counsel James Wagstaffe to Nir Margalit, then the General Counsel for Zip, (identified as document numbers 4 and 5 in NAR's Motion) are classic examples of attorney-client communications and attorney work product–i.e., a memorandum from outside counsel to Zip to the client's General Counsel regarding analysis of potential claims and procedural aspects of litigation. Indeed, NAR does not dispute that these documents constitute privileged attorney-client communications and attorney work product, only that there has been an intentional waiver.

### B. INTERNAL MEMORANDUMS FROM ZIP'S IN-HOUSE COUNSEL TO ITS BUSINESS EXECUTIVES

The three remaining documents at issue in NAR's Motion are documents prepared by Zip's in-house counsel: (1) a document discussing the laws of various states regarding rebates;[1] (2) a memorandum from a member of Zip's in-house Legal Department to Zip executives regarding counsel's preliminary assessment of the October 2002 VOW Policy; and (3) a memorandum from Zip's General Counsel to Zip executives regarding the VOW Policy and NAR's mid-year meeting (documents identified as numbers 1 through 3, respectively, in NAR's Motion). Again, NAR does not dispute that these internal memoranda from Zip's in-house counsel to its business executives are privileged attorney work product, attorney-client communications. Indeed, each document clearly represents a lawyer's legal advice.

---

[1] Although the author is not identified, the content of the document clearly demonstrates that this document was written by or at the direction of an attorney. Further, there is a handwritten notation indicating that the document was last updated by two individuals identified by first name. Those first names are the same first names as two of the four attorneys in Zip's in-house Legal Department.

### III. NAR'S TACTICAL, SELECTIVE DISCLOSURE THEORY IS SIMPLY IMPLAUSIBLE

Given the clear and undisputed privileged nature of the documents at issue, it is incontrovertible that Zip would not intentionally have disclosed these documents, and hence waived the privilege, to the Department in response to the CID. Astonishingly, NAR claims otherwise and asserts that Zip intentionally provided these documents to the Department to assist it in its investigation and potential litigation. NAR further asserts that Zip is now seeking to prevent NAR from utilizing the same privileged documents as part of some sort of tactical strategy in litigation to which Zip is not a party. (Mot. at 8-9.)

NAR's unsupported waiver and subject matter waiver theory defies common sense. As NAR notes in its motion, the Department notified Zip's former General Counsel, Nir Margalit, that, essentially, documents provided under the CID to the Department could be discoverable by NAR should the investigation proceed to litigation. (Mot. at 2.) Given that disclosure, it is entirely illogical that Zip would reasonably have believed that it could tactically provide these privileged documents to the Department, but prevent NAR from receiving and utilizing them should litigation actually ensue as it has. NAR's claim that Zip "intentionally" disclosed these documents to the Department is nothing more than sheer speculation. The only plausible course of events was that these documents were inadvertently disclosed amidst the tens of thousands of documents that Zip's in-house team produced in response to the Department CID.

NAR next contends that not only did Zip make this implausible tactical decision to attempt to selectively waive its privilege to the Department, but that Zip is now invoking the privilege only as a further tactical decision to prevent NAR from using the documents in this litigation. (Mot. at 1.) Again, this argument defies any semblance of logic. Zip has not limited its assertion of privilege to NAR. Once Zip's counsel learned of the disclosure of the privileged documents at issue, Zip immediately asserted its privilege in writing with respect to both NAR and the Department, and accordingly, demanded that both entities with possession return the obviously privileged documents. Both the Department and NAR are, thus, prohibited from using

those documents. Moreover, as NAR implies, the documents may be helpful to the Department's case. (Mot. at 9.) If Zip were, as NAR suggests, engaging in tactical maneuvering, rather than legitimately seeking to protect obviously privileged documents, it would have no reason to prevent NAR and the Department from utilizing these documents in the litigation.

Despite NAR's attempts to paint Zip as an entity seeking to abuse the protections afforded to privileged documents, NAR's theory of events supporting this picture simply does not match the facts that NAR, itself, presents. This is not a case of tactical gamesmanship. This is simply a matter of an entity seeking to protect its attorney-client privileged communications.[2]

## IV.     NAR'S MOTION DEFIES THE SPIRIT OF THE PRIVILEGE "CLAWBACK"

Throughout the Court's supervision of Zip's paper and electronic response to NAR's subpoena, the topic of protecting privileged information, particularly with respect to the massive electronic email search results, repeatedly has been discussed before the Court. The consistent essence of those discussions has been that the protection of attorney-client privileged documents should not be a game of hide and seek; rather, the current approach to disclosures, as well articulated by this Court, has been to economically and promptly facilitate broad transmissions of documents while the parties reasonably contemplate that the attorney-client privilege will be preserved equally as to these documents–such as those at issue here–that obviously are privileged.

Against this backdrop, NAR would now have the Court turn on the context of these ongoing privilege protection discussions, i.e., order that the indisputably privileged documents be returned to their owner due to their inadvertent inclusion in a prior mass document production. No one contemplated that such technicalities as NAR now argues would be rewarded under these circumstances. Indeed, in contrast to the spirit of the process–and despite

---

[2]     NAR asserts that Zip's alleged selective waiver of privileged documents to the Department of Justice successfully convinced the Department to bring the instant litigation. (Mot. at 8-9.) It goes without saying that the absence of any motion by the Department to reject the retroactive assertion of privilege by Zip speaks volumes as to the importance and relevance of these documents in the instant matter.

having possession of these privileged documents for over a year–not once during the extensive discussions and court proceedings over Zip document production has NAR ever notified Zip or the Court that it had possession of these documents, let alone claimed that Zip allegedly waived its privilege to the document or their subject matter. Indeed, NAR waited to do so until after Zip formally agreed to provide the entirely unreviewed results of the electronic email search to NAR's[3] outside counsel with a documented "clawback" agreement in place. Given NAR's lack of disclosure, combined with the spirit of this process, the Court should deny NAR's Motion.

---

[3] Nor did NAR mention this issue in November, 2006 when it consented to an inadvertent waiver agreement as production was beginning with Zip's counsel. Additionally, in early January, 2007, when NAR informed Zip that Zip need not even log attorney-client emails, it never mentioned the waiver issue presented by this motion. Further, although NAR has notified Zip counsel that it is in possession of other clearly privileged documents, it curiously chose not to address these documents in the motion presented before the Court.

**V.      CONCLUSION**

NAR's motion is based on a factually implausible waiver theory and an approach to discovery that defies the spirit of privilege "clawback" agreements.  Accordingly, Zip respectfully requests that the Court deny NAR's Motion in its entirety.

Date:   April 9, 2007                                    Respectfully submitted,
                                                                        ZipRealty, Inc.


                                                    By:  /s/Thomas K. McQueen            _____
                                                            Thomas K. McQueen
                                                            SONNENSCHEIN NATH & ROSENTHAL LLP
                                                            233 S. Wacker Drive
                                                            7800 Sears Tower
                                                            Chicago, Illinois  60606
                                                            312-876-8000
                                                            312-876-7934
                                                            tmcqueen@sonnenschein.com

## CERTIFICATE OF SERVICE

I, Thomas K. McQueen, an attorney, certify that on this 9th day of April, 2007, I caused copies of the foregoing document to be served on plaintiff's counsel listed below by electronically filing them with the Court's ECF/CM System.

Counsel for NAR:

Jack R. Bierig
Scott D. Stein
Danielle J. Carter
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
(312) 853-7036 (fax)

Counsel for DOJ:

Craig W. Conrath
Allen P. Grunes
Avery W. Gardiner
Carol A. Bell
David C. Kully
Lisa A. Scanlon
Mary Beth McGee
Michele Rose Woodruff
Owen Matthew Kendler
Robert P. Faulkner
U.S. Department of Justice
Antitrust Division
325 Seventh Street, N.W., Suite 300
Washington, DC 20530
(202) 307-5779
(202) 307-9952 (fax)

By:     /s/Thomas K. McQueen