**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05 C 5140 |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| NATIONAL ASSOCIATION OF REALTORS, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to reject the assertion of attorney-client privilege and attorney work product doctrine brought by Plaintiff United States of America ("DOJ") against Defendant National Association of Realtors ("NAR"). Four documents are at issue: an email sent by NAR's in-house counsel, Laurie Janik ("Janik") relaying to NAR staff advice given to Janik by NAR's outside counsel (Bates-number ENAR 34918); a note handwritten by Janik reflecting a meeting with NAR's outside counsel (Bates-number 08091); and two drafts of a magazine article containing Janik's notes and edits (Bates-numbers NAR 05944 and NAR 05765). NAR claims that the documents are protected by the attorney-client privilege, the work product doctrine, or both. All but the first document appear on NAR's privilege log. The Court has examined the documents *in camera*. For the reasons below, the Court denies DOJ's motion.[1]

---

[1]NAR previously brought a similar motion against third party ZipRealty, Inc. ("Zip"), but at oral argument on May 10, 2007, Zip withdrew its assertion of privilege and agreed to produce

# I. LEGAL STANDARDS

**A.    Attorney-Client Privilege**

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). The privilege is based on a principle of confidentiality that enables attorneys to advise their clients properly. *Id.*

To determine whether a document is protected by the attorney-client privilege, the Seventh Circuit has adopted the following test:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir.1991). The party claiming the privilege has the burden of proving all of its essential elements. *Id.*

Documents that contain no request for legal advice, nor give legal advice, fall outside the scope of the privilege. *McCook Metals L.L.C. v. Alcoa Inc.,* 192 F.R.D. 242, 253 (N.D. Ill. 2000). While facts themselves are not protected by the privilege, the communication of facts between an attorney and client are protected if transmitted for the purpose of obtaining

---

the documents at issue. By minute order dated May 10, 2007, the Court ruled that Zip had not waived its claim of privilege over the subject matter contained in the documents at issue in NAR's motion, but only as to those five documents themselves.

legal advice. *Upjohn,* 449 U.S. at 395-96; *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 452-53 (N.D. Ill. 2006). The privilege also protects statements made by the attorney to the client "in circumstances where those communications rest on confidential information obtained from the client" or "where those communications would reveal the substance of a confidential communication by the client." *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000).

**B.     Attorney Work Product**

The work product doctrine protects materials prepared by an attorney in anticipation of litigation. *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767-78 (7th Cir. 2006). Materials containing an attorney's "mental impressions, conclusions, opinions, or legal theories" are never discoverable. *Id.* at 768; Fed. R. Civ. P. 26(b)(3). Materials are considered prepared in anticipation of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Binks Manufacturing Co. v. National Presto Indus.*, 709 F.2d 1109, 1119 (7th Cir. 1983) (quoting *Diversified Indus. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977)).

**C.     Waiver**

The general rule is that "[a]ny voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client privilege and thus waives the privilege." *Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989). The burden of

3

showing that the privilege was not waived and that any disclosure was inadvertent is on the party asserting the privilege. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997); *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 116 (N.D. Ill. 1996).

While there is no consensus in the Seventh Circuit regarding the appropriate test for analyzing waiver, the Court will apply a balancing test, which provides maximum flexibility based on the individual facts of any case. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 476 F. Supp. 2d 913, 944-45 (N.D. Ill. 2007). The balancing approach looks at five factors to determine if waiver has occurred: "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issues of fairness." *Id.* at 944 (quoting *Harmony Gold*, 169 F.R.D. at 116-17).

A party may waive its work product protection, just as it may waive its attorney-client privilege protection. *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003). The two privileges are independent and reflect different policies, and waiver of the attorney-client privilege does not automatically waive work product protection for the same document. *Eagle Compressors*, 206 F.R.D. 474, 479 (N.D. Ill. 2002). The work product doctrine is designed to protect the attorney's work and mental impressions from adversaries and third parties. *Id.* Because of the differing policy concerns, the inquiry as to whether work product protection is waived turns on whether the information is disclosed to an adversary, rather than whether there has merely been voluntary disclosure. *Vardon Golf*, 213

F.R.D. at 534.

## II. DISCUSSION

### A. Email Sent by Janik to NAR Staff ("Janik Email")

The Janik Email relays antitrust advice given to Janik by NAR's outside counsel to several members of NAR's staff. DOJ argues that portions of the Janik Email contain facts, not legal advice, and that those portions are not privileged. The contents of the Janik Email make clear that those facts were provided to NAR's outside counsel for the purpose of obtaining legal advice. Therefore, the Court concludes that the entire email is privileged.

DOJ further argues that any privilege was waived when NAR produced the email in response to a DOJ Civil Investigative Demand ("CID") during the investigation of the case before the litigation was filed. In response to the CID, NAR produced emails of eight NAR executives in "native" format, including two copies of the Janik Email, after reviewing them for privilege. After the litigation was filed, NAR converted the emails to "image files," reviewed them for confidentiality but not specifically for privilege, and again produced two copies of the Janik Email. DOJ later discovered the email and informed NAR of its possession of the email and the email's potentially privileged status. NAR then asserted privilege. The Court finds that the balancing-test factors weigh in NAR's favor and do not support a finding of waiver.

#### 1. Reasonableness of Precautions

NAR reviewed the emails for privilege before producing them in response to the CID.

While it is somewhat surprising that NAR did not discover the privileged nature of the Janik Email after re-reviewing the emails for confidentiality, it was reasonable for NAR to have reviewed the emails only once specifically for privilege and not unreasonable for the email to have slipped through.

### 2. Time Taken to Rectify

While several years passed between the production of the Janik Email and NAR's assertion of privilege, NAR took virtually no time to rectify the error once DOJ notified it of the production.

### 3. Scope of Discovery

The scope of discovery in this case is substantial: NAR produced over 22,000 documents, including thousands of emails, in response to the CID.

### 4. Extent of Disclosure

The extent of the disclosure was limited. While NAR produced the email twice and two copies each time, the second production was made as part of a comprehensive second production in image-file format before which NAR did not re-review the emails for privilege. Further, the total number of documents NAR alleges were inadvertently produced is very few in light of the volume of production.

### 5. Fairness and Conclusion

While DOJ argues that the relevance of the document tilts the fairness analysis in its favor, relevancy alone does not support disruption of the privilege. *Chamberlain Grp. v.*

*Interlogix, Inc.*, 2002 WL 467153, at *2 (N.D. Ill. March 27, 2002). Nor has NAR attempted to obtain a tactical advantage by disclosing the documents. Further, the facts themselves that DOJ seeks through the Janik Email are subject to disclosure by means of ordinary discovery, and have in fact already been disclosed in Janik's deposition. While DOJ challenges the consistency of Janik's deposition answers with her statements in the Janik Email, a contention disputed by NAR, a privileged document is not the proper tool with which to attack an adversary's assertions. Therefore, all of the factors lead the Court to conclude that the disclosure was inadvertent and the privilege was not waived.

B.  **Janik's Handwritten Notes of Meeting with NAR's Outside Counsel ("Janik Notes")**

The Janik Notes reflect antitrust advice given to Janik by NAR's outside counsel. DOJ concedes that the Janik Notes were privileged, but argues that NAR waived the privilege by producing them.

NAR initially withheld production of the Janik Notes in response to the CID on the basis of privilege, and included the Janik Notes on its privilege log. The document was re-filed in boxes containing produced documents, however, and those boxes were later converted to electronic format in their entirety and produced to DOJ electronically. NAR's production of the Janik Notes was more inadverdent and excusable than the Janik Email. All of the other balancing-test factors remain the same, so the Court finds that the Janik Notes were inadvertently produced and remain protected by the privilege.

C.  **Two Drafts of Magazine Article**

The final documents over which DOJ challenges NAR's assertion of privilege and work product are two drafts of an article that was published in a NAR magazine and distributed to NAR members. The article addresses NAR's VOW policy[2] and explains to NAR members how to comply with the antitrust laws when using the policy. The two drafts at issue contain redlined edits and notes typed into the text by Janik while going back and forth with the magazine's editor over the content of the article.

DOJ makes several arguments why the drafts are not subject to attorney-client or work product protection. First, it argues that portions of the drafts convey only factual information. That argument fails for the reasons the Court rejected it with respect to the Janik Email. Second, DOJ argues that the articles merely convey business advice. While portions of the drafts may contain advice that could be characterized as business advice, on the whole, and certainly with respect to the portions of the drafts in which DOJ is interested, the article conveys legal advice pertaining to the antitrust implications of the VOW policy.

Third, DOJ argues that the drafts were not written in confidence, but rather, with the intent to distribute the article to NAR members. This argument confuses the drafts with the final, published version of the article. The drafts contain explanations of legal issues by Janik that were not intended for publication and do not appear in the published version of the article, and thus were intended to remain confidential. *See McCook Metals*, 192 F.R.D. at

---

[2]The VOW (virtual office website) policy is central to DOJ's antitrust claims against NAR. For more details, see *United States v. Nat'l Assoc. of Realtors*, 2006 WL 3434263, Slip Op. (N.D. Ill. Nov. 27, 2006) (memorandum opinion and order denying motion to dismiss).

255.

The drafts are clearly protected as work product as well. The drafts include Janik's mental impressions, conclusions, and opinions about potential antitrust liability arising from the VOW policy. Further, the drafts were written after DOJ initiated its investigation and after NAR had been threatened with legal action by third parties, so the drafts can fairly be said to have been prepared because of the prospect of litigation.

Finally, DOJ argues that NAR waived any privilege or work product protection by producing the drafts to DOJ. The differences in waiver analysis between privilege and work product are irrelevant as the drafts were disclosed to an adversary. NAR's attorney-client and work product protection over the drafts was not waived for the same reasons the attorney-client privilege was not waived as to the Janik Notes.

### III. CONCLUSION

**For the foregoing reasons, DOJ's motion to reject NAR's assertion of privilege is denied.**

**SO ORDERED THIS 22nd DAY OF MAY, 2007.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Craig W. Conrath
Avery W. Gardiner
U.S. Department of Justice
Antitrust Division
325 Seventh Street, NW
Room 400
Washington, DC 20530

Counsel for Plaintiff


Thomas Keith McQueen
Sonnenschein, Nath & Rosenthal, LLP
233 South Wacker Drive
7800 Sears Tower
Chicago, IL 60606

Counsel for ZipRealty, Inc.


Jack R. Bierig
Scott David Stein
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

Counsel for Defendant