

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 05 C 5140 ) ) Judge Kennelly |
| NATIONAL ASSOCIATION OF REALTORS® | ) ) ) |
| Defendant. | ) ) ) |

*MVL-11-18-08*

**[~~AMENDED PROPOSED~~] FINAL JUDGMENT**

WHEREAS, Plaintiff, the United States of America, filed its Amended Complaint on October 4, 2005, alleging that Defendant National Association of Realtors® ("NAR") adopted policies that restrain competition from innovative real estate brokers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Plaintiff and Defendant, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact, and without this Final Judgment constituting any evidence against, or any admission by, any party regarding any issue of fact or law;

WHEREAS, Defendant has not admitted and does not admit either the allegations set forth in the Amended Complaint or any liability or wrongdoing;

WHEREAS, the United States does not allege that Defendant's Internet Data Exchange (IDX) Policy in its current form violates the antitrust laws; and

WHEREAS, the United States requires Defendant to agree to certain procedures and prohibitions for the purpose of preventing the loss of competition alleged in the Complaint;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. **JURISDICTION**

This Court has jurisdiction over the Parties and subject matter of this action. The Complaint states a claim upon which relief may be granted against Defendant under Section 1 of the Sherman Act, as amended (15 U.S.C. § 1).

## II. **DEFINITIONS**

As used in this Final Judgment:

A.    "Broker" means a Person licensed by a state to provide services to a buyer or seller in connection with a real estate transaction. The term includes any Person who possesses a Broker's license and any agent or sales associate who is affiliated with such a Broker.

B.    "Covered Entity" means each Member Board that, at any time prior to the expiration of this Final Judgment, operates a multiple listing service and each multiple listing service that, at any time prior to the expiration of this Final Judgment, is exclusively owned by one or more Member Boards or is otherwise obligated to comply with NAR mandatory multiple listing service policies.

C.    "Customer" means a seller client of a Broker or a Person who has expressed to a Broker an interest in purchasing residential real property and who has described the type, features, or location of the property in which he or she has an interest, entitling the Broker to Provide the Customer multiple listing service ("MLS") listing information by any method (*e.g.*, by hand, mail, facsimile, electronic mail, or display on a VOW).

2

D.     "Final Judgment" includes the Modified VOW Policy attached as Exhibit A and the definition of MLS Participant and accompanying Note attached as Exhibit B.

E.     "ILD Policy" means the "ILD (Internet Listing Display) Policy" that NAR adopted on or about August 31, 2005, and any amendments thereto.

F.     "Including" means including, but not limited to.

G.     "Listing Information" means all records of residential properties (and any information relating to those properties) stored or maintained by a multiple listing service.

H.     "Member Board" means any state or local Board of Realtors® or Association of Realtors®, including any city, county, inter-county, or inter-state Board or Association, and any multiple listing service owned by, or affiliated with, any such Board of Realtors® or Association of Realtors®.

I.     "Modified VOW Policy" means the policy attached to this Final Judgment as Exhibit A.

J.     "NAR" means the National Association of Realtors®, its predecessors, successors, divisions, subsidiaries, affiliates, partnerships, and joint ventures and all directors, officers, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is or has been partial (twenty percent or more) or total ownership or control between NAR and any other Person.

K.     "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

L.     "Provide" means to deliver, display, disseminate, convey, or reproduce.

3

M.     "Rule" means any rule, model rule, ethical rule, bylaw, policy, standard, or guideline and any interpretation of any Rule issued or approved by NAR, whether or not the final implementation date of any such Rule has passed.

N.     "VOW" or "virtual office website" means a website, or feature of a website, operated by a Broker or for a Broker by another Person through which the Broker is capable of providing real estate brokerage services to consumers with whom the Broker has first established a Broker-consumer relationship (as defined by state law) where the consumer has the opportunity to search MLS data, subject to the Broker's oversight, supervision, and accountability.

O.     "VOW Policy" means the "Policy governing use of MLS data in connection with Internet brokerage services offered by MLS Participants ('Virtual Office Websites')," adopted by NAR on or about May 17, 2003, and any amendments thereto.

P.     The terms "and" and "or" have both conjunctive and disjunctive meanings.

### III. APPLICABILITY

This Final Judgment applies to NAR and all other Persons in active concert or participation with NAR who have received actual notice of this Final Judgment. A Member Board shall not be deemed to be in active concert with NAR solely as a consequence of the Member Board's receipt of actual notice of this Final Judgment and its affiliation with or membership in NAR and its involvement in regular activities associated with its affiliation with or membership in NAR (*e.g.*, coverage under a NAR insurance policy, attendance at NAR meetings or conventions, or review of Member Board policies by NAR).

4

## IV. **PROHIBITED CONDUCT**

Subject to the provisions of Sections V and VI of this Final Judgment, the Modified VOW Policy (Exhibit A), and the definition of MLS Participant and accompanying Note (Exhibit B), NAR shall not adopt, maintain, or enforce any Rule, or enter into or enforce any agreement or practice, that directly or indirectly

A.    prohibits a Broker from using a VOW or prohibits, restricts, or impedes a Broker who uses a VOW from providing to Customers on its VOW all of the Listing Information that a Broker is permitted to Provide to Customers by hand, mail, facsimile, electronic mail, or any other methods of delivery;

B.    unreasonably disadvantages or unreasonably discriminates against a Broker in the use of a VOW to Provide to Customers all of the Listing Information that a Broker is permitted to Provide to Customers by hand, mail, facsimile, electronic mail, or any other methods of delivery;

C.    prohibits, restricts, or impedes the referral of Customers whose identities are obtained from a VOW by a Broker who uses a VOW to any other Person, or establishes the price of any such referral;

D.    imposes fees or costs upon any Broker who operates a VOW or upon any Person who operates a VOW for any Broker that exceed the reasonably estimated actual costs incurred by a Member Board in providing Listing Information to the Broker or Person operating the VOW or in performing any other activities relating to the VOW, or discriminates in such VOW-related fees or costs between those imposed upon a Broker who operates a VOW and those imposed upon a Person who operates a VOW for a Broker, unless the MLS incurs greater costs

5

in providing a service to a Person who operates a VOW for a Broker than it incurs in providing the same service to the Broker; or

      E.     is inconsistent with the Modified VOW Policy.

## V. REQUIRED CONDUCT

      A.     Within five business days after entry of this Final Judgment, NAR shall repeal the ILD Policy and direct each Member Board that adopted Rules implementing the ILD Policy to repeal such Rules at the next meeting of the Member Board's decisionmaking body that occurs more than ten days after receipt of the directive, but no later than ninety days after entry of this Final Judgment.

      B.     Within five business days after entry of this Final Judgment, NAR shall direct Member Boards that adopted Rules implementing the VOW Policy to repeal such Rules at the next meeting of the Member Board's decisionmaking body that occurs more than ten days after receipt of the directive, but no later than ninety days after entry of this Final Judgment.

      C.     Within five business days after entry of this Final Judgment, NAR shall adopt the Modified VOW Policy. NAR shall not change the Modified VOW Policy without either obtaining advance written approval by the United States Department of Justice, Antitrust Division ("DOJ") or an order of the Court pursuant to Section VIII of this Final Judgment authorizing the proposed modification.

      D.     Within five business days after entry of this Final Judgment, NAR shall direct each Covered Entity to adopt the Modified VOW Policy within ninety days after entry of this Final Judgment, and to thereafter maintain, act consistently with, and enforce Rules implementing the Modified VOW Policy. NAR shall simultaneously direct Covered Entities,

6

beginning upon receipt of the directive, not to adopt, maintain, or enforce any Rule or practice that NAR would be prohibited from adopting, maintaining, or enforcing pursuant to Section IV of this Final Judgment (including Rules or practices that unreasonably discriminate against Brokers in their operation of VOWs).

E.      If NAR determines that a Covered Entity has not timely adopted or maintained, acted consistently with, or enforced Rules implementing the Modified VOW Policy, it shall, within thirty days of such determination, direct in writing that the Covered Entity do so. NAR shall deny coverage under any NAR insurance policy (or cause coverage to be denied) to any Covered Entity for as long as that Covered Entity refuses to adopt, maintain, act consistently with, and enforce rules implementing the Modified VOW Policy. NAR shall also notify the DOJ of the identity of that Covered Entity and the Modified VOW Policy provisions it refused to adopt, maintain, act consistently with, or enforce. For purposes of this provision, a failure of a Covered Entity to adopt, maintain, act consistently with, or enforce Rules implementing the Modified VOW Policy within ninety days of a written directive to that Covered Entity from NAR shall constitute a refusal by the Covered Entity to do so.

F.      If NAR determines that a Member Board has adopted, maintained, or enforced any Rule or practice that NAR would be prohibited from adopting, maintaining, or enforcing pursuant to Section IV of this Final Judgment (including Rules or practices that unreasonably discriminate against Brokers in their operation of VOWs), it shall, within thirty days of such determination, direct in writing that the Member Board rescind and cease to enforce that Rule or practice. NAR shall deny coverage under any NAR insurance policy (or cause coverage to be denied) to any Member Board for as long as that Member Board refuses to rescind and cease to

7

enforce that Rule or practice. NAR shall also notify the DOJ of the identity of that Member

Board and the Rule or practice it refused to rescind and cease to enforce. For purposes of this

provision, a Member Board's failure to rescind and cease to enforce the Rule or practice within

ninety days of a written directive from NAR shall constitute a refusal by the Member board to do

so.

      G.      Within thirty days of entry of this Final Judgment, NAR shall designate an

Antitrust Compliance Officer with responsibility for educating Member Boards about the

antitrust laws and for achieving full compliance with this Final Judgment. The Antitrust

Compliance Officer shall be responsible for the following:

      (1)      supervising NAR's review of Rules of NAR's Member Boards for compliance with this Final Judgment and the Modified VOW Policy;

      (2)      maintaining copies of any communications with any Person containing allegations of any Member Board's (i) noncompliance with any provision of the Modified VOW Policy or with this Final Judgment or (ii) failure to enforce any Rules implementing the Modified VOW Policy;

      (3)      reporting to the United States 180 days after entry of this Final Judgment and again on the first anniversary of the entry of this Final Judgment, the identity of each Covered Entity that has not adopted Rules implementing the Modified VOW Policy;

      (4)      ensuring that each of NAR's Member Boards that owns or operates a multiple listing service are provided briefing materials, within ninety days of the entry of this Final Judgment, on the meaning and requirements of the Modified VOW Policy and this Final Judgment; and

      (5)      holding an annual program for NAR Member Boards and their counsel that includes a discussion of the antitrust laws (as applied to such Member Boards) and this Final Judgment.

      H.      NAR shall maintain and shall furnish to the DOJ on a quarterly basis (beginning

ninety days after entry of this Final Judgment) copies of any communications with any Person

8

containing allegations of any Member's Board's (1) noncompliance with any provision of the Modified VOW Policy or with this Final Judgment or (2) failure to enforce any Rules implementing the Modified VOW Policy.

I.      Within five business days after entry of this Final Judgment, NAR shall provide, in a prominent size and location on its website (www.realtor.org) a hyperlink to a webpage on which NAR has published copies of

> (1)     this Final Judgment;
>
> (2)     a notification that Member Boards must repeal any Rules implementing the ILD and VOW Policies (in accordance with Sections V.A and V.B of this Final Judgment); and
>
> (3)     a copy of the Modified VOW Policy.

NAR shall also publish each of the three above items in the first issue of Realtor® Magazine scheduled for publication after the date of entry of this Final Judgment.

## VI. PERMITTED CONDUCT

A.      Subject to Section IX of this Final Judgment, nothing in this Final Judgment shall prohibit NAR from adopting and maintaining the definition of MLS Participant and the accompanying Note, together attached as Exhibit B.  However, NAR shall direct each Member Board not to suspend or expel any Broker from multiple listing service membership or participation for reasons of the Broker's then-failure to qualify for membership or participation under the definition of MLS Participant and the accompanying Note, together attached as Exhibit B, until May 27, 2009.

B.      Notwithstanding any of the above provisions, and subject to Section IX of this Final Judgment, nothing in this Final Judgment shall prohibit NAR from adopting, maintaining,

9

or enforcing Rules that are generally applicable on their face and that do not, in their application,
unreasonably restrict any method of delivery of Listing Information to Customers.

## VII. COMPLIANCE INSPECTION

A.     For the purposes of determining or securing compliance with this Final Judgment,
or of determining whether this Final Judgment should be modified or vacated, and subject to any
legally recognized privilege, from time to time authorized representatives of the DOJ, including
consultants and other Persons retained by the United States, shall, upon written request of an
authorized representative of the Assistant Attorney General in charge of the Antitrust Division,
and on reasonable notice to NAR, be permitted:

(1)     access during NAR's office hours to inspect and copy, or at the option of
the United States, to require NAR to provide hard copy or electronic
copies of, all books, ledgers, accounts, records, data, and documents in the
possession, custody, or control of NAR, relating to any matters contained
in this Final Judgment; and

(2)     to interview, either informally or on the record, NAR's officers,
employees, or agents, who may have their individual counsel and counsel
for NAR present, regarding such matters. The interviews shall be subject
to the reasonable convenience of the interviewee and without restraint or
interference by NAR. NAR may, however, prevent the interviewee
from divulging matters protected by the attorney-client privilege, work
product doctrine, or other applicable privilege.

B.     Upon the written request of an authorized representative of the Assistant Attorney
General in charge of the Antitrust Division, NAR shall submit written reports or response to
written interrogatories, under oath if requested, relating to its compliance with any of the matters
contained in this Final Judgment as may be requested.

C.     No information or documents obtained by the means provided in this section shall
be divulged by the United States to any Person other than an authorized representative of the

10

executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D. If at the time information or documents are furnished by NAR to the United States, NAR marks as confidential any pertinent page of such material on the grounds that such page contains information as to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, then the United States shall give NAR ten calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## VIII. RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## IX. NO LIMITATION ON GOVERNMENT RIGHTS

Nothing in this Final Judgment shall limit the right of the United States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any Rule or practice adopted or enforced by NAR or any of its Member Boards.

## X. EXPIRATION OF FINAL JUDGMENT

This Final Judgment shall expire ten years from the date of its entry.

11

## XI. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Dated:  11-18-08

Court approval subject to procedures
of Antitrust Procedures and Penalties
Act, 15 U.S.C. § 16

Matthew F. Kennelly
United States District Judge

12

# EXHIBIT A

**Policy governing use of MLS data in connection with**
**Internet brokerage services offered by MLS Participants**
**("Virtual Office Websites")**

## I. Definitions and Scope of Policy.

1. For purposes of this Policy, the term Virtual Office Website ("VOW") refers to a
Participant's Internet website, or a feature of a Participant's Internet website, through which the
Participant is capable of providing real estate brokerage services to consumers with whom the
Participant has first established a broker-consumer relationship (as defined by state law) where
the consumer has the opportunity to search MLS data, subject to the Participant's oversight,
supervision, and accountability.

a. A Participant may designate an Affiliated VOW Partner ("AVP") to operate a VOW on behalf
of the Participant, subject to the Participant's supervision and accountability and the terms of this
Policy.

b. A non-principal broker or sales licensee, affiliated with a Participant, may, with the
Participant's consent, operate a VOW or have a VOW operated on its behalf by an AVP. Such a
VOW is subject to the Participant's supervision and accountability and the terms of this Policy.

c. Each use of the term "Participant" in this Policy shall also include a Participant's
non-principal brokers and sales licensees (with the exception of references in this section to the
"Participant's consent" and the "Participant's supervision and accountability," and in section
III.10.a, below, to the "Participant acknowledges"). Each reference to "VOW" or "VOWs"
herein refers to all VOWs, whether operated by a Participant, by a non-principal broker or sales
licensee, or by an AVP.

2. The right to display listings in response to consumer searches is limited to display of MLS
data supplied by the MLS(s) in which the Participant has participatory rights. This does not
preclude a firm with offices participating in different MLSs from operating a master website
with links to such offices' VOWs.

3. Participants' Internet websites, including those operated for Participants by AVPs, may also
provide other features, information, or services in addition to VOWs (including the Internet Data
Exchange ("IDX") function).

4. The display of listing information on a VOW does not require separate permission from the
Participant whose listings will be available on the VOW.

5. Except as permitted in Sections III and IV, MLSs may not adopt rules or regulations that
conflict with this Policy or that otherwise restrict the operation of VOWs by Participants.

## II. Policies Applicable to Participants' VOWs.

1. A Participant may provide brokerage services via a VOW that include making MLS active listing data available, but only to consumers with whom the Participant has first established a lawful consumer-broker relationship, including completion of all actions required by state law in connection with providing real estate brokerage services to clients and customers (hereinafter "Registrants"). Such actions shall include, but are not limited to, satisfying all applicable agency, non-agency, and other disclosure obligations, and execution of any required agreement(s).

2. A Participant's VOW must obtain the identity of each Registrant and obtain each Registrant's agreement to Terms of Use of the VOW, as follows:

a. A Registrant must provide his or her name and a valid email address. The Participant must send an email to the address provided by the Registrant confirming that the Registrant has agreed to the Terms of Use (described in subsection c below). The Registrant may be permitted to access the VOW only after the Participant has verified that the email address provided is valid and that Registrant received the Terms of Use confirmation.

b. The Registrant must supply a user name and a password, the combination of which must be different from those of all other Registrants on the VOW, before being permitted to search and retrieve information from the MLS database via the VOW. The user name and password may be established by the Registrant or may be supplied by the Participant, at the option of the Participant. An email address may be associated with only one user name and password. The Registrant's password and access must expire on a date certain but may be renewed. The Participant must at all times maintain a record of the name and email address supplied by the Registrant, and the username and current password of each Registrant. Such records must be kept for not less than 180 days after the expiration of the validity of the Registrant's password. If the MLS has reason to believe that a Participant's VOW has caused or permitted a breach in the security of the data or a violation of MLS rules related to use by one or more Registrants, the Participant shall, upon request, provide to the MLS a copy of the record of the name, email address, user name, current password, and audit trail, if required, of any Registrant identified by the MLS to be suspected of involvement in the violation.

c. The Registrant must be required affirmatively to express agreement to a "Terms of Use" provision that requires the Registrant to open and review an agreement that provides at least the following:

    i.    That the Registrant acknowledges entering into a lawful consumer-broker relationship with the Participant;

    ii.   That all data obtained from the VOW is intended only for the Registrant's personal, non-commercial use;

2

iii.      That the Registrant has a bona fide interest in the purchase, sale, or lease of real estate of the type being offered through the VOW;

iv.      That the Registrant will not copy, redistribute, or retransmit any of the data or information provided, except in connection with the Registrant's consideration of the purchase or sale of an individual property;

v.      That the Registrant acknowledges the MLS's ownership of, and the validity of the MLS's copyright in, the MLS database.

After the Registrant has opened for viewing the Terms of Use agreement, a "mouse click" is sufficient to acknowledge agreement to those terms. The Terms of Use Agreement may not impose a financial obligation on the Registrant or create any representation agreement between the Registrant and the Participant.

The Terms of Use agreement shall also expressly authorize the MLS, and other MLS Participants or their duly authorized representatives, to access the VOW for the purposes of verifying compliance with MLS rules and monitoring display of Participants' listings by the VOW.

d.  An agreement entered into at any time between the Participant and Registrant imposing a financial obligation on the Registrant or creating representation of the Registrant by the Participant must be established separately from the Terms of Use, must be prominently labeled as such, and may not be accepted solely by mouse click.

3. A Participant's VOW must prominently display an e-mail address, telephone number, or specific identification of another mode of communication (e.g., live chat) by which a consumer can contact the Participant to ask questions, or get more information, about properties displayed on the VOW. The Participant, or a non-principal broker or sales licensee licensed with the Participant, must be willing and able to respond knowledgeably to inquiries from Registrants about properties within the market area served by that Participant and displayed on the VOW.

4. A Participant's VOW must protect the MLS data from misappropriation by employing reasonable efforts to monitor for and prevent "scraping" or other unauthorized accessing, reproduction, or use of the MLS database.

5. A Participant's VOW must comply with the following additional requirements:

a. No VOW shall display the listing or property address of any seller who has affirmatively directed its listing broker to withhold its listing or property address from display on the Internet. The listing broker or agent shall communicate to the MLS that a seller has elected not to permit display of the listing or property address on the Internet. Notwithstanding the foregoing, a Participant who operates a VOW may provide to consumers via other delivery

3

mechanisms, such as email, fax, or otherwise, the listing or property address of a seller who has determined not to have the listing or address for its property displayed on the Internet.

b. A Participant who lists a property for a seller who has elected not to have the property listing or the property address displayed on the Internet shall cause the seller to execute a document that conforms to the form attached to this Policy as Appendix A. The Participant shall retain such forms for at least one year from the date they are signed.

c. With respect to any VOW that

(i) allows third-parties to write comments or reviews about particular listings or displays a hyperlink to such comments or reviews in immediate conjunction with particular listings, or
(ii) displays an automated estimate of the market value of the listing (or hyperlink to such estimate) in immediate conjunction with the listing,

the VOW shall disable or discontinue either or both of those features as to the seller's listing at the request of the seller. The listing broker or agent shall communicate to the MLS that the seller has elected to have one or both of these features disabled or discontinued on all Participants' websites. Except for the foregoing and subject to subparagraph (d), a Participant's VOW may communicate the Participant's professional judgment concerning any listing. Nothing shall prevent a VOW from notifying its customers that a particular feature has been disabled "at the request of the seller."

d. A VOW shall maintain a means (e.g., e-mail address, telephone number) to receive comments about the accuracy of any data or information that is added by or on behalf of the VOW operator beyond that supplied by the MLS and that relates to a specific property displayed on the VOW. The VOW operator shall correct or remove any false data or information relating to a specific property upon receipt of a communication from the listing broker or listing agent for that property explaining why the data or information is false. However, the VOW operator shall not be obligated to remove or correct any data or information that simply reflects good faith opinion, advice, or professional judgment.

e. Each VOW shall refresh MLS data available on the VOW not less frequently than every 3 days.

f. Except as provided elsewhere in this Policy or in MLS rules and regulations, no portion of the MLS database may be distributed, provided, or made accessible to any person or entity.

g. Every VOW must display a privacy Policy that informs Registrants of the ways in which information obtained from them will be used.

4

h. A VOW may exclude listings from display based only on objective criteria, including, but not limited to, factors such as geography, list price, type of property, cooperative compensation offered by listing broker, or whether the listing broker is a Realtor®.

6. A Participant who intends to operate a VOW must notify the MLS of its intention to establish a VOW and must make the VOW readily accessible to the MLS and to all MLS Participants for purposes of verifying compliance with this Policy and any other applicable MLS rules or policies.

7. A Participant may operate more than one VOW itself or through an AVP. A Participant who operates a VOW itself shall not be precluded from also operating VOWs in conjunction with AVPs.

## III. Policies Applicable to Multiple Listing Services.

1. A Multiple Listing Service shall permit MLS Participants to operate VOWs, or to have VOWs operated for them by AVPs, subject to the requirements of state law and this Policy.

2. An MLS shall, if requested by a Participant, provide basic "downloading" of all MLS non-confidential listing data, including without limitation address fields, listings types, photographs, and links to virtual tours. Confidential data includes only that which Participants are prohibited from providing to customers orally and by all other delivery mechanisms. They include fields containing the information described in paragraph IV(1) of this Policy, provided that sold data (i.e., listing information relating to properties that have sold) shall be deemed confidential and withheld from a download only if the actual sales prices of completed transactions are not accessible from public records. For purposes of this Policy, "downloading" means electronic transmission of data from MLS servers to a Participant's or AVP's server on a persistent basis. An MLS may also offer a transient download. In such case, it shall also, if requested, provide a persistent download, provided that it may impose on users of such download the approximate additional costs incurred by it to do so.

3. This Policy does not require an MLS to establish publicly accessible sites displaying Participants' listings.

4. If an MLS provides a VOW-specific feed, that feed must include all of the non-confidential data included in the feed described in paragraph 2 above except for listings or property addresses of sellers who have elected not to have their listings or addresses displayed on the Internet.

5. An MLS may pass on to those Participants who will download listing information the reasonably estimated costs incurred by the MLS in adding or enhancing its "downloading" capacity to enable such Participants to operate VOWs.

6. An MLS may require that Participants (1) utilize appropriate security protection, such as firewalls, as long as such requirement does not impose security obligations greater than those

employed concurrently by the MLS, and/or (2) maintain an audit trail of Registrants' activity on the VOW and make that information available to the MLS if the MLS has reason to believe that any VOW has caused or permitted a breach in the security of the data or a violation of applicable MLS rules.

7.  An MLS may not prohibit or regulate display of advertising or the identification of entities on VOWs ("branding" or "co-branding"), except to prohibit deceptive or misleading advertising or co-branding.  For purposes of this provision, co-branding will be presumed not to be deceptive or misleading if the Participant's logo and contact information (or that of at least one Participant, in the case of a VOW established and operated by or for more than one Participant) is displayed in immediate conjunction with that of every other party, and the logo and contact information of all Participants displayed on the VOW is as large as the logo of the AVP and larger than that of any third party.

8.  Except as provided in this Policy, an MLS may not prohibit Participants from enhancing their VOWs by providing information obtained from sources other than the MLS, additional technological services (such as mapping functionality), or information derived from non-confidential MLS data (such as an estimated monthly payment derived from the listed price), or regulate the use or display of such information or technological services on any VOW.

9.  Except as provided in generally applicable rules or policies (such as the Realtor® Code of Ethics), an MLS may not restrict the format of data display on a VOW or regulate the appearance of VOWs.

10.  Subject to the provisions below, an MLS shall make MLS listing data available to an AVP for the exclusive purpose of operating a VOW on behalf of a Participant.  An MLS shall make MLS listing data available to an AVP under the same terms and conditions as those applicable to Participants.  No AVP has independent participation rights in the MLS by virtue of its right to receive data on behalf of a Participant, or the right to use MLS data except in connection with operation of a VOW for a Participant.  AVP access to MLS data is derivative of the rights of the Participant on whose behalf the AVP is downloading data.

a.  A Participant, non-principal broker or sales licensee, or AVP may establish the AVP's right to receive and use MLS data by providing to the MLS a writing in which the Participant acknowledges its or its non-principal broker's or sales licensee's selection of the AVP to operate a VOW on its behalf.

b.  An MLS may not charge an AVP, or a Participant on whose behalf an AVP operates a VOW, more than a Participant that chooses to operate a VOW itself (including any fees or costs associated with a license to receive MLS data, as described in (g), below), except to the extent that the MLS incurs greater costs in providing listing data to the AVP than the MLS incurs in providing listing data to a Participant.

6

c. An MLS may not place data security requirements or restrictions on use of MLS listing data by an AVP that are not also imposed on Participants.

d. An MLS must permit an AVP to download listing information in the same manner (e.g., via a RETS feed or via an FTP download), at the same times and with the same frequency that the MLS permits Participants to download listing information.

e. An MLS may not refuse to deal directly with an AVP in order to resolve technical problems with the AVP. However, the MLS may require that the Participant on whose behalf the AVP is operating the VOW participate in such communications if the MLS reasonably believes that the involvement of the Participant would be helpful in order to resolve the problem.

f. An MLS may not condition an AVP's access to a data feed on the financial terms on which the AVP provides the site for the Participant.

g. An MLS may require Participants and AVPs to execute license or similar agreements sufficient to ensure that Participants and AVPs understand and agree that data provided by the MLS may be used only to establish and operate a VOW on behalf of the Participant and not for any other purpose.

h. An MLS may not (i) prohibit an AVP from operating VOWs on behalf of more than one Participant, and several Participants may designate an AVP to operate a single VOW for them collectively, (ii) limit the number of entities that Participants may designate as AVPs for purposes of operating VOWs, or (iii) prohibit Participants from designating particular entities as AVPs except that, if an AVP's access has been suspended or terminated by an MLS, that MLS may prevent an entity from being designated an AVP by another Participant during the period of the AVP's suspension or termination.

i. Except as stated below, an MLS may not suspend or terminate an AVP's access to data (a) for reasons other than those that would allow an MLS to suspend or terminate a Participant's access to data, or (b) without giving the AVP and the associated Participant(s) prior notice and the process set forth in the applicable provisions of the MLS rules for suspension or termination of a Participant's access. Notwithstanding the foregoing, an MLS may immediately terminate an AVP's access to data (a) if the AVP is no longer designated to provide VOW services to any Participant, (b) if the Participant for whom the AVP operates a VOW ceases to maintain its status with the MLS, (c) if the AVP has downloaded data in a manner not authorized for Participants and that hinders the ability of Participants to download data, or (d) if the associated Participant or AVP has failed to make required payments to the MLS in accordance with the MLS's generally applicable payment policies and practices.

11. An MLS may not prohibit, restrict, or impede a Participant from referring Registrants to any person or from obtaining a fee for such referral.

## IV. Requirements That MLSs May Impose on the Operation of VOWs and Participants.

1. An MLS may impose any, all, or none of the following requirements on VOWs but may impose them only to the extent that equivalent requirements are imposed on Participants' use of MLS listing data in providing brokerage services via all other delivery mechanisms:

a. A Participant's VOW may not make available for search by or display to Registrants the following data intended exclusively for other MLS Participants and their affiliated licensees:

i. Expired, withdrawn, or pending listings.

ii. Sold data unless the actual sales price of completed transactions is accessible from public records.

iii. The compensation offered to other MLS Participants.

iv. The type of listing agreement, i.e., exclusive right to sell or exclusive agency.

v. The seller(s) and occupant(s) name(s), phone number(s) and email address(es), where available.

vi. Instructions or remarks intended for cooperating brokers only, such as those regarding showing or security of the listed property.

b. The content of MLS data that is displayed on a VOW may not be changed from the content as it is provided in the MLS. MLS data may be augmented with additional data or information not otherwise prohibited from display as long as the source of such other data or information is clearly identified. This requirement does not restrict the format of MLS data display on VOWs or display of fewer than all of the listings or fewer authorized data fields.

c. There shall be a notice on all MLS data displayed indicating that the data is deemed reliable but is not guaranteed accurate by the MLS. A Participant's VOW may also include other appropriate disclaimers necessary to protect the Participant and/or the MLS from liability.

d. Any listing displayed on a VOW shall identify the name of the listing firm in a readily visible color, and reasonably prominent location, and in typeface not smaller than the median typeface used in the display of listing data.

e. The number of current or, if permitted, sold listings that Registrants may view, retrieve, or download on or from a VOW in response to an inquiry may be limited to a

8

reasonable number. Such number shall be determined by the MLS, but in no event may the limit be fewer than 100 listings or 5% of the listings in the MLS, whichever is less.

f. Any listing displayed on a VOW shall identify the name of the listing agent.

2. An MLS may also impose the following other requirements on the operation of VOWs:

a. Participants displaying other brokers' listings obtained from other sources, e.g., other MLSs, non-participating brokers, etc. shall display the source from which each such listing was obtained.

b. A maximum period, no shorter than 90 days and determined by the MLS, during which Registrants' passwords are valid, after which such passwords must be changed or reconfirmed.

3. An MLS may not prohibit Participants from downloading and displaying or framing listings obtained from other sources, e.g., other MLSs or from brokers not participating in that MLS, etc., but may require either that (i) such information be searched separately from listings obtained from other sources, including other MLSs, or (ii) if such other sources are searched in conjunction with searches of the listings available on the VOW, require that any display of listings from other sources identify such other source.


EFFECTIVE DATE:

MLSs have until not later than [90 DAYS AFTER ENTRY OF THE FINAL JUDGMENT] to adopt rules implementing the foregoing policies and to comply with the provisions of section III above, and (2) Participants shall have until not later than 180 days following adoption and implementation of rules by an MLS in which they participate to cause their VOW to comply with such rules.


See Appendix A for Seller Opt-Out Form

9

## Appendix A
### Seller Opt-Out Form

1.[Check one]

      a. [Check here]  I have advised my broker or sales agent that I do not want the listed property to be displayed on the Internet;  or

      b. [Check here]   I have advised my broker or sales agent that I do not want the address of the listed property to be displayed on the Internet.

2.  I understand and acknowledge that, if I have selected option a, consumers who conduct searches for listings on the Internet will not see information about the listed property in response to their search.

_____

initials of seller

10

# EXHIBIT B

(Statement of MLS Policy)
**Statement 7.9 . . . Definition of MLS "Participant"**

The term "Participant" in a Board Multiple Listing Service is defined, as follows:

"Where the term REALTOR® is used in this explanation of policy in connection with the word 'Member' or the word 'Participant', it shall be construed to mean the REALTOR® principal or principals, of this or any other Board, or a firm comprised of REALTOR® principals participating in a Multiple Listing Service owned and operated by the Board. Participatory rights shall be held by an individual principal broker unless determined by the Board or MLS to be held by a firm. It shall not be construed to include individuals other than a principal or principals who are REALTOR® Members of this or any other Board, or who are legally entitled to participate without Board membership. However, under no circumstances is any individual or firm, regardless of membership status, entitled to MLS 'Membership' or 'Participation' unless they hold a current, valid real estate broker's license and ~~are capable of offering and accepting~~ offer or accept cooperation and compensation to and from other Participants or are licensed or certified by an appropriate state regulatory agency to engage in the appraisal of real property. Use of information developed by or published by a Board Multiple Listing Service is strictly limited to the activities authorized under a Participant's licensure(s) or certification and unauthorized uses are prohibited. Further, none of the foregoing is intended to convey 'Participation' or 'Membership' or any right of access to information developed by or published by a Board Multiple Listing Service where access to such information is prohibited by law. Additionally, the foregoing does not prohibit Board Multiple Listing Services, at their discretion, from categorizing non-principal brokers, sales licensees, licensed and certified appraisers and others affiliated with the MLS 'Members' or 'Participants' as 'users' or 'subscribers' and, holding such individuals personally subject to the rules and regulations and any other governing provisions of the MLS and to discipline for violations thereof. MLSs may, as a matter of local determination, limit participatory rights to individual principal brokers, or to their firms, and to licensed or certified appraisers, who maintain an office or Internet presence from which they are available to represent real estate sellers, buyers, lessors or lessees or from which they provide appraisal services. (Amended 5/02)

Where the terms 'subscriber' or 'user' are used in connection with a Multiple Listing Service owned or operated by a Board of REALTORS®, they refer to non-principal brokers, sales licensees, and licensed and certified real estate appraisers affiliated with an MLS Participant and may, as a matter of local option, also include a Participant's affiliated unlicensed administrative and clerical staff, personal assistants, and individuals seeking licensure or certification as real estate appraisers provided that any such individual is under the direct supervision of an MLS Participant or the Participant's licensed designee. If such access is available to unlicensed or uncertified individuals, their access is subject to the rules and regulations, the payment of applicable fees and charges (if any), and the limitations and restrictions of state law. None of the foregoing shall diminish the Participant's ultimate responsibility for ensuring compliance with the rules and regulations of the MLS by all individuals affiliated with the Participant. (Adopted 4/92)

Under the 'Board of Choice' policy, MLS participatory rights shall be available to any REALTOR® (principal) or any firm comprised of REALTORS® (principals) irrespective of where they hold primary membership subject only to their agreement to abide by any MLS rules or regulations; agreement to arbitrate disputes with other Participants; and payment of any MLS dues, fees, and charges." Participatory rights granted under Board of Choice do not confer voting privileges or eligibility for office as an MLS committee member, officer, or director, except as granted at the discretion of the local Board and/or MLS. (Amended 5/97)

The universal access to services component of Board of Choice is to be interpreted as requiring that MLS Participatory rights be available to REALTOR® principals, or to firms comprised of REALTOR® principals, irrespective of where their primary or secondary membership is held. This does not preclude an MLS from assessing REALTORS® not holding primary or secondary membership locally fees, dues, or charges that exceed those or, alternatively, that are less than those charged Participants holding such memberships locally or additional fees to offset actual expenses incurred in providing MLS services such as courier charges, long distance phone charges, etc., or for charging any Participant specific fees for optional additional services. (Amended 11/96)

None of the foregoing shall be construed as requiring a Board to grant MLS participatory rights, under Board of Choice, where such rights have been previously terminated by action of that Board's Board of Directors." (Adopted 11/95)

(Model MLS rules)
**Section 3—Participation:** Any REALTOR® of this or any other Board who is a principal, partner, corporate officer, or branch office manager acting on behalf of a principal, without further qualification, except as otherwise stipulated in these bylaws, shall be eligible to participate in Multiple Listing upon agreeing in writing to conform to the rules and regulations thereof and to pay the costs incidental thereto.* However, under no circumstances is any individual or firm, regardless of membership status, entitled to Multiple Listing Service "membership" or "participation" unless they hold a current, valid real estate broker's license and ~~are capable of offering and accepting~~ offer or accept compensation to and from other Participants or are licensed or certified by an appropriate state regulatory agency to engage in the appraisal of real property.** Use of information developed by or published by a Board Multiple Listing Service is strictly limited to the activities authorized under a Participant's licensure(s) or certification and unauthorized uses are prohibited. Further, none of the foregoing is intended to convey "participation" or "membership" or any right of access

to information developed by or published by a Board Multiple Listing Service where access to such information is prohibited by law. (Amended 11/96)

Note: Mere possession of a broker's license is not sufficient to qualify for MLS participation. Rather, the requirement that an individual or firm 'offers or accepts cooperation and compensation' means that the Participant actively endeavors during the operation of its real estate business to list real property of the type listed on the MLS and/or to accept offers of cooperation and compensation made by listing brokers or agents in the MLS. "Actively" means on a continual and on-going basis during the operation of the Participant's real estate business. The "actively" requirement is not intended to preclude MLS participation by a Participant or potential Participant that operates a real estate business on a part time, seasonal, or similarly time-limited basis or that has its business interrupted by periods of relative inactivity occasioned by market conditions. Similarly, the requirement is not intended to deny MLS participation to a Participant or potential Participant who has not achieved a minimum number of transactions despite good faith efforts. Nor is it intended to permit an MLS to deny participation based on the level of service provided by the Participant or potential Participant as long as the level of service satisfies state law.

The key is that the Participant or potential Participant actively endeavors to make or accept offers of cooperation and compensation with respect to properties of the type that are listed on the MLS in which participation is sought. This requirement does not permit an MLS to deny participation to a Participant or potential Participant that operates a Virtual Office Website ("VOW") (including a VOW that the Participant uses to refer customers to other Participants) if the Participant or potential Participant actively endeavors to make or accept offers of cooperation and compensation. An MLS may evaluate whether a Participant or potential Participant "actively endeavors during the operation of its real estate business" to "offer or accept cooperation and compensation" only if the MLS has a reasonable basis to believe that the Participant or potential Participant is in fact not doing so.

The membership requirement shall be applied on a nondiscriminatory manner to all Participants and potential Participants.